13-3110 (L)
United States v. Howard

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of February, two thousand sixteen.

PRESENT: DENNIS JACOBS,
        RICHARD C. WESLEY,
        DEBRA ANN LIVINGSTON,
                Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,
      Appellee,

-v.-                        13-3110 (L)
                                   14-1086 (Con)

HAROLD HOWARD,
      Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:          PHILIP R. SCHATZ, Wrobel, Schatz & Fox LLP, New York, New York.

FOR APPELLEES:          MONICA J. RICHARDS, Assistant united States Attorney, for William J. Hochul, Jr., United States Attorney for the Western

District of New York, Buffalo, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Harold Howard appeals from the judgment of conviction and sentence of the United States District Court for the Western District of New York (Arcara, J.). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

1. Howard contends that the trial court improperly prevented him from demonstrating inconsistent statements made by Myron Johnson (a cooperating witness for the prosecution), which Howard proposed to do by the testimony of police officers. However, these inconsistencies were brought out on direct examination of Mr. Johnson, who admitted that he initially denied ownership of the cocaine found in his house and that he later admitted ownership when he realized the police were going to arrest his mother instead of him. Howard contends that he was deprived of the "special impact" of a police officer admitting that Mr. Johnson had lied, but provides no legal support that he was entitled to have this evidence introduced by one means rather than another.[1]

2. The prosecution introduced hearsay evidence of Andrew Willis during the re-direct examination of Officer Joe Pitts. This was not error. Pitts testified regarding information he obtained from Willis, a confidential informant, which led to a traffic stop of Howard's car, in which the officer found $100,000 and a gun.

---

[1] Additionally, because the police officers testified before Johnson, the requirements of Federal Rule of Evidence 613(b) were not satisfied. Fed. R. Evid. 613(b) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires.").

2

"Curative admissibility" allows the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has opened the door by introducing inadmissible evidence on the same issue, and (b) when needed to rebut a false impression that may have resulted from the opposing party's evidence. United States v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993). Howard's counsel asked the officer whether Willis told him there would be money in the car. Howard's counsel then proceeded to cross examine on the officer's inability to identify the source of the money, leaving the impression that the money may have been Willis's instead of Howard's. On re-direct, the prosecution asked if Mr. Willis said anything about the source of the money, and the officer testified that Willis told him that Howard was contacting Willis in an attempt to purchase four kilograms of cocaine. This limited use of hearsay corrected a false impression raised by defense counsel's question, and was thus within the bounds of Rosa.[2] See Id.

---

[2] Howard argues that his counsel's questions did not elicit any inadmissible evidence because Pitt's cross-examination merely "amplified themes that had already been established" on direct examination. App't Br. at 26. However, prior to this point in the trial, the prosecution had been careful to elicit no testimony about what the confidential informant had actually said. See App'x at 117 (Testimony of Officer Pitts) ("Based upon the information that we received, we believed that a large amount of U.S. currency would be coming into that vehicle in the state that afternoon.").

To the extent information from the confidential informant was before the jury prior to defense counsel's questioning, it was to show the course of investigation (the traffic stop and search of Howard's car), and was not for the truth of the matter asserted; *i.e.*, the informant's statements were not put in to show that there actually was a large amount of currency in the car but rather to show why Howard's car was being targeted for a traffic stop and seizure at all.

The officer also testified that Willis said he had sold multiple kilogram quantities to Howard in the past.[3] Even had the district court erred in admitting this testimony -- which it did not -- such error would have been harmless. See Kotteakos v. United States, 328 U.S. 750, 764-65 (1946); United States v. Lyles, 593 F.2d 182, 196 (2d Cir. 1979) ("A nonconstitutional error . . . is harmless if it is highly probable that the error did not contribute to the verdict. Where there is overwhelming evidence of guilt, as there was here, erroneous evidentiary rulings on such collateral matters are often harmless." (citations, quotation marks, and alterations omitted)). The verdict reflects that Howard was held accountable only for amounts seized in November 2011 -- not for prior dealings with Willis. Furthermore, there was testimony from Johnson that he and Howard sold multiple kilograms of cocaine monthly throughout 2008. It is highly probable that any error in the introduction of Willis's hearsay statement did not contribute to the verdict, and was therefore harmless.

3. In its closing, the prosecution argued that anybody to whom defendant sold drugs could be a coconspirator. The prosecution thus misstated the law; however, this was not raised before the district court and is reviewed for plain error. See Fed. R. Crim. P. 52(b). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." Johnson v. United States, 520 U.S. 461, 466-67 (1997). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forefeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id.

As the defendant observes, our law of conspiracy allows a narrow exception for a mere buyer-seller relationship. See United States v. Parker, 554 F.3d 230, 234 (2d Cir. 2009). However, Howard was not engaged in selling street-level or personal-use quantities. He was a distributor who bought and possessed cocaine in kilogram quantities, which he then supplied to others in smaller

---

[3] The charged conspiracy began in November 2008, and this traffic stop occurred in July 2008, so any prior dealings between Willis and Howard would have predated this traffic stop and thus concerned uncharged transactions.

4

wholesale quantities (in 125- and 250-gram amounts).  See United States v. Borelli, 336 F.2d 376, 384 (2d Cir. 1964) ("A seller of narcotics in bulk surely knows that the purchasers will undertake to resell the goods . . . ."). Additionally, there was evidence that, at a minimum, Howard was in a conspiracy with Johnson because they cooperated to transport quantities of cocaine from Atlanta for re-sale in Buffalo.  Defendant does not dispute that the jury was properly instructed as to what constitutes a conspiracy, and advised that if any attorney states a legal principle differently, it is the judge's instructions that they must follow.  In any event, because the buyer-seller exception was not at play in this case, the absence of a curative instruction was not plain error.

4.    Howard contends that he was improperly restricted in his cross-examination of Johnson because the court declined to instruct Johnson to answer questions concerning other coconspirators and buyers.  Johnson demurred (variously) by invoking the Fifth Amendment and by stating that he did not want to get others in trouble.  The refusal to answer was, in substance and effect, Johnson's answer to the question.  The refusal did not bear directly on the many specific details of his testimony about Howard's participation in the conspiracy.  See United States v. Treacy, 639 F.3d 32, 45 (2d Cir. 2011) ("testimony should ordinarily be stricken when the invocation of the privilege against self-incrimination prevents the defendant from cross-examining the witness with respect to his credibility regarding the *specific details* of his direct testimony." (emphasis added)).  Furthermore, the refusal was itself an indicator of Johnson's credibility; and Howard argued in summation that Johnson's refusal to identify other coconspirators made his testimony unworthy of belief.  The district court did not abuse its discretion by declining to order Johnson to identify other members of the conspiracy.

5.    Howard argues for the first time on appeal that the prosecution's DNA expert lacked the necessary experience or training in statistical analysis to testify about the infinitesimal chances the genetic profile he determined was Howard's would match an unrelated individual.  At trial Howard challenged the expert's testimony under Federal Rule of Evidence 403, not Federal Rule of Evidence 702, which governs the admission of expert testimony.  As such, the current challenge is reviewable for plain error only.  See Johnson, 520 U.S. at 466-67.

5

We regularly approve the reliability of DNA profiling. See, e.g., United States v. Jakobetz, 955 F.2d 786, 797-98 (2d Cir. 1992). Although the probability testified to by the DNA expert is an astounding number, nothing in defendant's appeal seriously questions the reliability of the DNA evidence in this case -- certainly not to a level that would undermine the "fairness, integrity, or public reputation" of these judicial proceedings. See Johnson, 520. U.S. at 466-67.

6. Howard's last contention is that the "cumulative effect" of these evidentiary errors cast doubt on the fairness of the proceedings and require a new trial. As discussed above, the evidence in this case was overwhelming: In November 2009 (within the charged conspiracy) Howard was pulled over by law enforcement while driving a car while in possession of a loaded weapon and three eight balls of cocaine. On November 16, 2011, Howard was a passenger in Johnson's Jeep, in which officers found cocaine. The same day, after using Howard's keys to enter a house, its garage, and Howard's vehicle, officers found three kilograms of cocaine, three guns, and ammunition. We rejected all of Howard's evidentiary challenges. Nevertheless, given the weight of the evidence in this case, we have little trouble concluding that, even assuming the validity of the errors Howard identifies, those errors would have been harmless.

For the foregoing reasons, and finding no merit in Howard's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK